IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 5140 |
| ) | |
| FRAN LAKETEK, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

This action by the United States seeks two forms of relief:

1. a money judgment against Fran Laketek ("Laketek") based on an unpaid federal tax assessment attributable to the failure of Fran-Co Construction Company ("Fran-Co"), the corporation over which Laketek once presided, to remit to the government income taxes and Federal Insurance Contribution Act ("FICA") taxes that had been withheld from wages paid to its employees; and

2. a foreclosure judgment against real property located at 1980 Clover Drive, Inverness, Illinois, based on the federal tax lien attached to that real property by reason of the unpaid federal tax assessment.

At this juncture the United States has moved for summary judgment only as to the money judgment. For the reasons laid out below, this Court grants its motion.

Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the

absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 466 U.S. 242, 248 (1986)).

What follows is a summary of the facts viewed in the light most favorable to nonmovant Laketek, but within the limitations created by the extent of her compliance (or noncompliance) with the strictures of LR 56.[1] And that obviates the need, in the

---

[1] LR 56.1 implements Rule 56 by requiring each party to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are agreed upon. This opinion cites to the United States' statement and exhibits as "U.S. St. ¶--" and "U.S. Ex. --," respectively, and to Laketek's response and exhibits as "L. St. ¶--" and "L. Ex. --," respectively. Laketek's deposition is referred tp as "L. Dep. at --." Any additional statements Laketek submitted in response to the United States' motion for partial summary judgment are referred to as "L. Add.St. ¶--." Where an assertion in either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement.

evidentiary recital, to repeat "according to Laketek" or the like or to identify any conflicting account, though inclusion of the latter is sometimes called for as a purely informational matter.

Facts

For all four quarters of 1998 and the first two quarters of 1999, Fran-Co failed to remit to the government the income and FICA taxes that it withheld from wages paid to its employees (U.S. St. ¶15). As a result, on February 5, 2001 a delegate of the Secretary of the Treasury made an assessment against Laketek in the amount of $221,267.14 (id.). That was done pursuant to 26 U.S.C. §6672 ("Section 6672") (id.), a statute discussed in greater detail below.

Throughout the tax periods relevant to this litigation, Laketek was Fran-Co's president, sole shareholder and sole member of its Board of Directors.[2] Beginning in 1993 and continuing through all four quarters of 1998, Laketek was also the only Fran-Co employee who signed the corporation's Internal Revenue Service ("IRS") Forms 941, the federal employment tax returns that it filed quarterly (U.S. St. ¶¶7-8). In addition, from 1993 through 1999--on at least a weekly basis--Laketek signed all checks drawn on bank accounts held in Fran-Co's name (U.S. St.

---

[2] Fran-Co is an Illinois corporation involved in environmental asbestos removal, lead paint removal, carpentry and painting (L. Dep. 31, *ll.* 21-24 through 32, *ll.* 1-14). Laketek herself selected the name Fran-Co for the company (U.S. St. ¶3).

3

¶¶9-10; L. Dep. 57, *ll.* 18-24 through 58, *l.* 1). On other occasions Laketek exercised control over Fran-Co's finances by refusing to sign checks drawn on the corporation's accounts that were brought to her for her signature (U.S. St. ¶11).

Toward the end of 1998 Laketek first learned that Fran-Co was delinquent in paying employment taxes to the IRS (U.S. St. ¶12). Despite that knowledge, from January through March 1999 Laketek continued to sign checks drawn on Fran-Co's bank account for purposes other than meeting the corporation's tax obligations (U.S. St. ¶13).[3] Those checks were brought to Laketek for her

---

[3] Of those payments made in early 1999, Laketek says that more than $320,000 was taken by Northwest Community Bank and applied to a $300,000 line of credit that the bank had extended to Fran-Co (L. St. ¶14; L. Add.St. ¶¶18, 20-21). But part of the evidentiary material that Laketek relies on to support that assertion constitutes inadmissible hearsay (see L. Ex. 2) and hence is not properly part of the Rule 56(e) mix on the current motion. Moreover, that material is not admissible under the "business record" exception to the hearsay rule because it has not been properly authenticated as such a document (see Fed. R. Evid. 803(6); Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000)). Laketek also submits that another $200,000 was removed from the Fran-Co bank account via a "telephone transfer" that she did not authorize (L. St. ¶14), but she has provided no supporting evidentiary material. Instead she argues that she and the other named defendants in this matter need to conduct additional discovery as to the $200,000 telephone transfer-- presumably to corroborate that such a transfer took place and to determine exactly who received the $200,000. Because Laketek has not properly filed to seek leave to conduct additional discovery pursuant to Rule 56(f) as this Court had invited, her request is denied (see Woods, 234 F.3d at 990 and Gutierrez v. AT&T Broadband, LLC, 382 F.3d 725, 731 (7th Cir. 2004), explaining that motions for additional discovery made in the midst of summary judgment briefing must specifically refer to Rule 56(f) and be supported with an affidavit). At the end of the day, however, neither of the matters referred to in this footnote

4

signature by Michael Palmieri ("Palmieri"), a Fran-Co employee who handled a number of the day-to-day responsibilities related to the corporation (L. St. ¶13). In particular, Palmieri served as the primary point of contact for Fran-Co customers (L. Add.St. ¶11; L. Ex. 10) and signed business records on behalf of the corporation (L. Add.St. ¶¶11-12). In addition, on at least one occasion Palmieri signed a contract on behalf of Fran-Co misidentifying himself as "President" of the corporation (L. St. ¶6; L. Add.St. ¶10; L. Ex. 1).[4]

---

carries the potential for raising a material (that is, outcome-determinative) fact that could avert summary judgment: Under the caselaw discussed hereafter, Laketek's possession and exercise of her powers vis-a-vis Fran-Co make her a "responsible person" for tax code purposes in all events.

[4] To provide additional evidence of Palmieri's alleged control over the corporation, Laketek asserts that he (1) hired and fired multiple Fran-Co employees, (2) overruled Laketek with respect to a specific pricing decision and (3) primarily handled daily discussions related to ongoing Fran-Co projects (L. Add.St. ¶¶7-8, 13). But the evidentiary materials on which Laketek seeks to rely to support those assertions either (1) do not in fact demonstrate that Palmieri exercised such authority or (2) constitute inadmissible hearsay:

   1. Two of the relevant exhibits--L. Exs. 7 and 8--show only that Fran-Co employed a different crew during the first quarter of 1999 than it did during the last quarter of 1998. Nothing in those exhibits, though, identifies Palmieri as the Fran-Co employee responsible for that personnel change.

   2. L. Exs. 9, 13 and 14 are inadmissible hearsay. True enough, L. Ex. 9 might potentially have been admitted under Fed. R. Evid. 803(8) as a public record, and L. Exs. 13 and 14 might potentially have been admitted as business records under Fed. R. Evid. 803(6). But Laketek has failed to authenticate any of those exhibits, rendering them inadmissible (see Fed. R. Evid. 803(6) and 901(b)(1)(7);

5

Perhaps most significantly from Laketek's point of view, Palmieri also played a large role in the management of Fran-Co's finances. As noted earlier, he alone prepared and brought checks to Laketek for her signature (Laketek permitted him to have sole access to Fran-Co's checkbook)(L. St. ¶¶9, 13; L. Add.St. ¶15). In addition, although Laketek was the only Fran-Co employee with <u>proper</u> signature authority on all Fran-Co bank accounts (U.S. St. ¶9), Palmieri was still able to remove funds from those accounts (L. St. ¶9). That was so continuing well through 1999 because officials at Northwest Community Bank, the only bank where Fran-Co accounts were maintained after April 1998,[5] acted only according to his instructions (L. Add.St. ¶¶16, 19, 22).[6] Indeed, Laketek did not take the opportunity to review Fran-Co's bank statements (L. Add.St. ¶15; L. Dep. 26, *ll.* 6-8).

Moreover, in managing Fran-Co's finances Palmieri maintained a minimal amount of funds--if not a negative balance--in the corporation's accounts (L. Add.St. ¶17; U.S. Ex. 22; L. Dep. 26, *ll.* 6-8). Laketek says she was consequently unable to pay off Fran-Co's obligation to the IRS on behalf of the corporation (L.

---

<u>Woods</u>, 234 F.3d at 988, regarding the necessary authentication of business records, and <u>Article III Gun Shop, Inc. v. Gonzales</u>, 441 F.3d 492, 495 (7th Cir. 2006), regarding the necessary authentication of public records).

[5] L. Dep. 45, *ll.* 20-23.

[6] Bank officials also appear to have taken instructions from Nick Addante, another Fran-Co employee (L. Add.St. ¶16).

Add.St. ¶19).⁷  That obligation remains outstanding, although the exact amount Laketek is charged with owing is disputed (L. St. ¶16).

Laketek's Responsibility for Fran-Co's Violations

Under the Internal Revenue Code ("Code") employers are required "to withhold federal Social Security and income taxes from the wages of their employees and to hold those taxes in trust for the government" (Thomas v. United States, 41 F.3d 1109, 1113 (7th Cir. 1994)).  Section 6672(a) "protect[s] against employers' squandering this trust fund" (id.) by providing in relevant part:

> Any person required to...pay over any tax imposed by this title who willfully fails to...pay over such tax...shall...be liable to a penalty equal to the total amount of the tax...not accounted for and paid for.

To be liable under Section 6672(a) "a party must be a responsible 'person' of the delinquent corporation" and "must have willfully failed to carry out the responsibilities that the tax code imposes on him" (Bowlen v. United States, 956 F.2d 723, 727 (7th Cir. 1992)).  As Bowlen, id. at 726-27 states:

> The term "person" in section 6672 includes an officer or employee of a corporation who has the authority to avoid a default which constitutes a violation of the tax code.  26 U.S.C. §6671(b).

---

⁷ Palmieri exercised (usurped?) power over Fran-Co sufficiently to lock Laketek out of her office in late June 1999 (L. Add.St. ¶24).  Laketek was compelled to call the Bensenville Police Department to regain access to her office, her telephone system and her mail (id.).

7

And as <u>Thomas</u>, 41 F.3d at 1113 teaches, citing <u>Ruth v. United States</u>, 823 F.2d 1091, 1093 (7th Cir. 1987):

> Once the government has assessed a taxpayer for the nonpayment of taxes under section 6672, the taxpayer bears the burdens of production and persuasion to disprove his status as a responsible person who willfully failed to collect, account for or pay over the taxes.

This opinion turns then to each of these factors.

<u>Responsibility</u>

For purposes of Section 6672 a "responsible" person is any individual who "retains sufficient control of corporate finances that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations" (<u>Bowlen</u>, 956 F.2d at 728). More than one taxpayer can be considered responsible (see <u>Thomas</u>, 41 F.3d at 1113 (emphasis added), explaining that "[h]aving <u>significant</u> control does not mean having <u>exclusive</u> control over the disbursal of funds or the final say over whether taxes or bills are paid." Furthermore, "[t]he concept of responsibility in this context does not focus on whether a particular taxpayer could himself have paid the taxes" (id.). Instead the issue is simply "whether the taxpayer could have impeded the flow of business to the extent necessary to prevent the corporation from" failing to meet its tax obligations (id.).

Over the years courts have identified several discrete "indicia of responsible person status" (<u>Bowlen</u>, 956 F.2d at 728).

8

Although none of those factors is dispositive, it is worth recounting some of the more-often-considered elements. They include "ownership of stock or holding of an entrepreneurial stake in a corporation" (id.), the "authority to sign checks on corporate accounts or prevent their issuance by denying a necessary signature" (id.) and the holding of corporate office (see Monday v. United States, 421 F.2d 1210, 1214-15 (7th Cir. 1970)). In other words, and as aptly summarized in Bowlen, 956 F.2d at 728, "Section 6672 casts a broad net of liability," effectively capturing "all those closely connected enough with the business to prevent the default from occurring."

It is clear that Laketek is indeed a "responsible person" for purposes of Section 6672. To begin, and as already stated, during the relevant tax periods she was Fran-Co's sole president, sole shareholder and sole member of its Board of Directors. As such, the corporate resolutions authorized only Laketek to sign any checks in Fran-Co's name--and concomitantly and by definition, she alone could refuse to do so.

Even more importantly, Laketek continued to exercise both of the latter powers well after she knew of Fran-Co's outstanding obligations to the IRS. Ruth, 823 F.2d at 1094 held that the jury there did not err in finding that the defendant qualified as a "responsible person" under Section 6672 because, among other forms of proof, the government presented evidence at trial that

9

Ruth's signature was required on every check for the corporation, that he signed corporate documents as "secretary" or "secretary-treasurer" and "that his was a long-standing interest and participation in the company."[8] Because Laketek's circumstances do not materially differ from Ruth's, she too must be held liable under Section 6672.

Laketek contends otherwise. In particular she argues that she cannot qualify as a "responsible person" under the statute because, notwithstanding her title as Fran-Co's President, Palmieri had effectively wrested away all control over the corporation. Without access to Fran-Co's checkbook, she contends, she was in no position to pay off the corporation's obligations to the IRS. And without access to Fran-Co's bank statements, she further asserts, she was in no position even to know whether there were enough funds in Fran-Co's accounts to cover its liabilities.

But none of those assertions relieves Laketek of liability under Section 6672. As already stated, Section 6672 does not require that the "responsible person" be affirmatively able to

---

[8] Although Ruth dealt with a jury verdict, while this opinion speaks in the different context of a Rule 56 motion, it is the legal standards articulated in Ruth coupled with the absence of any material factual dispute here that renders this opinion's partial reliance on Ruth appropriate. That said, however, the ruling here would stand without any reference to or reliance on Ruth. And the same is true of Bowlen, cited and quoted both earlier and later in this opinion.

10

pay its tax obligation (see Thomas, 41 F.3d at 1113). Instead the mere ability to "impede[] the functioning" of a company until its tax obligations have been met can be enough to qualify someone as a "responsible person" (see id. at 1114). Thomas, for example, held that both defendants were "responsible" within the meaning of Section 6672 in part because each had the ability to "refus[e] to sign and co-sign checks" and to "refus[e] to allow payroll to go forward" until their employer had paid off its tax obligations (id.; see also Purdy Co. of Ill. v. United States, 814 F.2d 1183, 1187-88 (7th Cir. 1987)). Like the Thomas defendants, Laketek was similarly capable of refusing to sign checks for Fran-Co and hence qualifies as a "responsible person."

Bowlen further corroborates that conclusion. There a jury was not found to have erred in finding Danny and Michael Bowlen ("Bowlens") "responsible persons" for purposes of Section 6672, despite their having ceded control over all daily operations of their corporation to another corporate employee and officer, David Briggs ("Briggs") (956 F.2d at 729). As Bowlen, id. at 728 (emphasis added) explained:

> The Bowlens remained responsible persons during the third and fourth quarters of 1983. They retained their ownership interest in the corporation. They remained officers and directors of the corporation. They remained authorized signatories on corporate checks and admitted that they continued to sign checks paying creditors other than the United States during the third and fourth quarters of 1983. They signed notes on behalf of [their corporation] during the third and fourth quarters of 1983. In short, in spite of David

11

<u>Briggs' control, they held sufficient control over the financial affairs of [their corporation] to ensure that other creditors were not preferred while the back taxes remained unpaid</u>.

Laketek is in no different position. Although she may argue that the Bowlens willingly handed the reins of their corporation to Briggs, whereas she had the reins forcibly taken from her by Palmieri, Section 6672 caselaw does not treat that distinction as legally significant.[9] If anything, the caselaw makes clear that the statute is an intentionally "harsh" one (<u>Wright v. United States</u>, 809 F.2d 425, 428 (7th Cir. 1987), explaining further that the strict nature of Section 6672 is justified by "the danger against which it is directed--that of failing to pay over money withheld from employees until it is too late, because the company has gone broke").

In sum, Laketek's account as to the extent of Palmieri's control over Fran-Co's affairs does not vitiate Laketek's status as a "responsible person" within the meaning of Section 6672. On then, to the issue of whether Laketek also acted willfully in failing to remit to the IRS income and FICA taxes withheld from the wages of Fran-Co employees.

---

[9] In that respect the outrageous incident of Palmieri's locking Laketek out carries a significance that she fails to recognize. Laketek understandably responded by successfully enlisting the aid of law enforcement personnel, something that confirms the obvious: that residual power over the corporation was vested in her. And that is really another way of confirming her "responsible person" status despite her attempted disclaimer.

<u>Willfulness</u>

To have acted "willfully" for purposes of Section 6672 Laketek must have made "voluntary, conscious and intentional--as opposed to accidental--decisions not to remit funds properly withheld to the Government" (<u>Monday</u>, 421 F.2d at 1216). Statutory liability does not hinge on her possession of "a specific fraudulent intent or evil motive" (<u>Thomas</u>, 41 F.3d at 1114). Instead Laketek meets the willfulness standard simply by virtue of having "knowingly used available funds to prefer other creditors over the United States" (<u>Monday</u>, 421 F.2d at 1216; accord, <u>Garsky v. United States</u>, 600 F.2d 86, 91 (7th Cir. 1979)).

In light of that legal standard, coupled with Laketek's admission that she continued to sign checks drawn on Fran-Co's accounts even after she learned of her corporation's obligations to the IRS, it is beyond dispute that she acted willfully within the meaning of Section 6672. As already stated, Laketek learned of Fran-Co's liability to the IRS in late 1998 but continued to sign checks in Fran-Co's name well into 1999.[10] She therefore

---

[10] Because Laketek's admission in that regard is less than straightforward, it is worth reviewing the relevant portion of her response to the current motion in some detail. According to the United States, Laketek "learned towards the end of 1998 that Fran-Co Construction Company was behind on its obligation to pay employment taxes to the IRS" (U.S. St. ¶12). L. St. ¶12 does not contest that statement. Next the United States submits that Laketek "continued to sign checks drawn on the account of Fran-Co Construction Company during January, February, and March 1999"

13

acted willfully within the meaning of the statute.

Laketek unpersuasively argues that summary judgment is improper because a genuine issue of material fact exists as to whether Fran-Co paid creditors other than the IRS after Laketek learned of the outstanding tax obligations (L. Mem. at 7). Two facets of that contention call for discussion.

First Laketek asserts that Fran-Co did not pay "other creditors" within the meaning of Section 6672 because it was officials at Northwest Community Bank, working with Palmieri, who "took more than $320,000, the bulk of Fran-Co's monies, and offset them against the Fran-Co line of credit" (id.). But Laketek has not produced admissible evidence to support the very fact of that disbursement (see n.4). And even were that not the case, Laketek still has not shown that the bank's interest in Fran-Co funds was somehow superior to that of the IRS, such that the asserted $320,000-plus disbursement should not be considered

---

(U.S. St. ¶13). Laketek responds with a purported contest (L. St. ¶13, with internal citations omitted):

> This statement is misleading in that it implies that Fran Laketek had control of the Fran-Co checkbook. As the record shows, Fran Laketek did not have access to the Fran-Co checkbook....Accordingly, she only could sign checks given to her to sign by Michael Palmieri. She also did not have access to the bank statements.

But nowhere in that response does Laketek dispute the specific and controlling evidence adduced by the United States: that she did sign checks on behalf of Fran-Co in January, February and March 1999. That fact is thus uncontested.

14

in the course of a Section 6672 "willfulness" inquiry (see United States v. Kim, 111 F.3d 1351, 1359 (7th Cir. 1997), holding that the taxpayer is the one who "bears the burden of proving that no unencumbered funds were available to satisfy the [tax] delinquency" (emphasis added)).[11]

Second, Laketek argues that an additional $200,000 in Fran-Co funds disappeared via a telephone transfer that she never authorized. But again she has produced no evidence of any such transaction (see n.4).

In summary, Laketek has failed to raise a genuine issue of material fact regarding the "willfulness" of her behavior. From the admissible evidence tendered on the current motion, it must be concluded that she indeed acted "willfully" within the meaning of Section 6672.

## Conclusion

There being no genuine issue of material fact, the United States is entitled to a judgment as a matter of law on the issues posed by its motion for partial summary judgment. That motion is granted, and a status hearing is set for 8:45 a.m. December 20,

---

[11] As stated in Kim, 111 F.3d at 1359, quoting Honey v. United States, 963 F.2d 1083, 1090 (8th Cir. 1992)(alteration in original):

> [F]unds are encumbered only where the taxpayer is legally obligated to use the funds for a purpose other than satisfying the preexisting employment tax liability and if that legal obligation is superior to the interest of the IRS in the funds.

2007 to discuss further proceedings in this action.

_____
Milton I. Shadur
Senior United States District Judge

Date:  December 10, 2007